United States Courts
Southern District of Texas
FILED

MAY 06 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IBACKPACK OF TEXAS, LLC, a Texas limited liability company, and<br><br>DOUGLAS MONAHAN, individually and as an officer of iBackPack of Texas, LLC,<br><br>Defendants. | CIVIL NO. _____<br><br>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with Defendants' deceptive practices in the course of multiple crowdfunding campaigns.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c)(1), and 15 U.S.C. § 53(b).

COMPLAINT

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANTS

6. Defendant **iBackPack of Texas, LLC,** is a limited liability company organized in Texas. iBackPack of Texas, LLC, has its registered office address at 100 Congress Ave., Ste. 2000, Austin, TX 78701. iBackPack of Texas, LLC, transacts or has transacted business in this district and throughout the United States.

7. Defendant **Douglas Monahan** is or has been an officer and authorized bank signatory of iBackPack of Texas, LLC. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant iBackPack of Texas, LLC, including the acts and practices set forth in this Complaint. Monahan has resided in this district during the time period of the practices at issue in this Complaint and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

8. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

9. Defendants have run four crowdfunding campaigns that have raised over $800,000 from consumers, representing to consumers that they would use the funds primarily to develop, produce, complete, and deliver certain products, such as a backpack that incorporated various technology features. Defendants, however, have not used the funds primarily to develop, produce, complete, or deliver those products, but continued soliciting consumers for funds while using a large share of the funds on various personal expenses. While hundreds of consumers have complained about the campaigns, Defendants largely have ignored refund requests and then shut down the company, have transferred the remaining money to unrelated companies run by Defendant Monahan, and have ceased communications with consumers. To this day, Defendants have not used the funds primarily for development, production, completion, and distribution and have yet to provide a single completed product to any consumer who contributed to the campaigns.

## BACKGROUND ON CROWDFUNDING

10. Crowdfunding is the practice of funding a project or venture by raising relatively small amounts of money from a large number of people, typically via the Internet. Defendants have operated crowdfunding campaigns on two platforms, Indiegogo.com and Kickstarter.com.

11. Crowdfunding transactions typically involve consumers contributing money to a campaign that the campaign owner uses to develop and produce a product, which the campaign owner distributes to consumers after it is completed.

12. To initiate a crowdfunding campaign on either Kickstarter or Indiegogo, the campaign owner develops a homepage that provides information about the product that will be created with the raised funds.

## DEFENDANTS' iBACKPACK CAMPAIGNS

13. On or about August 14, 2015, Defendants started a crowdfunding campaign purportedly to produce and distribute the iBackPack, a backpack that incorporated various technology components, including batteries for charging laptops and cellphones. Defendants launched the campaign on Indiegogo, which describes itself to campaign owners and consumers as a platform designed to help campaign owners "generate the starter capital [they] need to validate [their] idea and develop [their] product" and "[r]aise money for [their] idea and find [their] first customers." Indiegogo's Terms of Use state that "Campaign Owners are legally bound to perform on any promise and/or commitment to Contributors (including delivering any Perks)." The campaign homepage included videos and photographs showcasing a developed prototype of the iBackPack and its various features. A copy of the homepage, as it appeared on or about February 1, 2017, appears in Exhibit A.

14. Defendants described specific products that consumers would receive depending on the amount of money contributed. For example, as shown in Exhibit A, consumers who contributed $169 would receive the iBackPack 1.0 Power Pack, which is a backpack that includes various batteries, cables, and a Bluetooth speaker. Defendants also made specific representations that the funds were being used to develop, produce, complete, and distribute the

product, for example by stating that refunds were not available because consumers were "contributing to a work-in-progress."

15. While Defendants originally estimated that the backpacks would be delivered in March 2016, on or about March 9, 2016, without having delivered any products, Defendants launched a Kickstarter campaign purportedly to produce and distribute the "iBackPack 2.0," an updated version of the still undelivered iBackPack that incorporated similar technology components. The homepage included videos and photographs showcasing a developed prototype of the iBackPack 2.0 and its various features. A copy of the homepage, as it appeared on or about February 1, 2017, appears in Exhibit B.

16. In order to launch a campaign on Kickstarter, Defendants were required to agree to Kickstarter's Terms of Use. By agreeing to Kickstarter's Terms of Use, Defendants represented to consumers that they would use the funds raised "appropriately." The Terms of Use also state, "[w]hen a project is successfully funded, the creator must complete the project and fulfill each reward."

17. Defendants represented that they were developing specific products that consumers would receive depending on the amount of money pledged. For example, as shown in Exhibit B, consumers who pledged $299 would receive the iBackPack 2.0 WiFi version. Defendants' original estimated delivery date was September 2016. Defendants also made specific representations that the funds were being used to develop, produce, complete, and distribute the product, including by promising backers that they will "do everything [they] can to deliver the iBackPack to you as planned," and representing that they already had manufacturers in place who had approved the product's design.

18.     The fundraising period for the iBackPack 2.0 Kickstarter campaign ended on April 13, 2016 after raising $76,694.

19.     By November 9, 2016, Defendants had raised approximately $721,000 for the iBackPack on Indiegogo.

20.     Defendants have made a number of representations indicating that the iBackpack products were being produced and finalized, when in fact, instead of using contributions to meet these promises, Defendants have been using the money for their unrelated expenses. This includes the following representations, for example:

   A.     On or about April 3, April 5, and May 13, 2016, Defendants posted videos and photos to the iBackPack 2.0 Kickstarter campaign purporting to show the iBackPack 2.0 being manufactured;

   B.     On or about August 19–20, 2016, Defendants announced that they were "busy finalizing all the various components of the iBackPack" for both the Indiegogo and Kickstarter campaigns;

   C.     On or about September 27, 2016, Defendants posted photos to the iBackPack Indiegogo campaign purporting to show the iBackPack being produced in China.

21.     Defendants also made representations to Indiegogo's staff that the product was being produced and delivered, in an effort to avoid losing their fundraising privileges. In early November 2016, Indiegogo's staff began to inquire about the status of the iBackPack campaign. Defendants told Indiegogo's staff that they were in the "full production and shipping phase" and had already shipped the iBackPack to "hundreds if not thousands" of contributors. At the same time, Defendants were telling iBackPack contributors a different story: that the iBackPack would

not be delivered until December 2016, which they subsequently delayed to fall of 2017. Indiegogo's staff suspended Defendants' fundraising privileges on or about November 9, 2016.

## DEFENDANTS' OTHER CAMPAIGNS

22. During the same time that Defendants were operating the two iBackPack campaigns, they also launched two other campaigns on Indiegogo. First, on or about October 7, 2015, Defendants launched a campaign purportedly to produce and distribute the MOJO, a shoulder bag that incorporated batteries, cables, and other electronic components. The homepage included videos and photographs showcasing a developed prototype of the MOJO and its various features. A copy of the homepage, as it appeared on or about August 30, 2017, appears in Exhibit C. Shortly after launching the MOJO campaign, Defendants made additional representations about their efforts to produce the product such as telling backers "I promise you we are doing all we can to give you something extraordinary."

23. The funding period for the MOJO campaign ended on December 6, 2015 after raising $3,644.

24. Second, on or about February 10, 2016, Defendants launched a campaign purportedly to produce and distribute the POW Smart Cable, a magnetic USB cable system with various technology features. The homepage included videos and photographs showcasing a developed prototype of the POW cables and other products offered. A copy of the homepage, as it appeared on or about August 30, 2017, appears in Exhibit D.

25. The funding period for the POW campaign ended on March 26, 2016 after raising $7,982.

26. Defendants have made a number of representations to consumers indicating that the products were being produced and distributed, including the following representations:

   A. On or about August 12, 2016, Defendants announced that the POW cables were "FINALLY on their way here," and that consumers would receive their POW cables "within the next 6 weeks or so;"

   B. On or about September 23, 2016, Defendants announced that they would be receiving the POW cables "any day," so consumers should update their shipping addresses;

   C. On or about September 23, 2016, Defendants offered consumers the opportunity to accept an iBackPack as a substitute for the MOJO, but reiterated that "[t]he company has not given up its efforts towards providing the MOJO product";

   D. On or about November 9, 2016, Defendants announced that they had placed an order for the POW products with a strategic partner and that "the products are already in the air from China."

  27. Defendants also told Indiegogo's staff, on or about October 21, 2016, that the "MOJO BAG IS DONE/FINISHED/SHIPPED/OVER WITH," and likewise that "POW CABLES ARE DONE/FINISHED/NEARLY ALL SHIPPED/LAST ONES GOING OUT."

## DEFENDANTS' FAILURE TO ABIDE BY THEIR REPRESENTATIONS

  28. Despite Defendants' repeated assurances, Defendants have not used contributions to produce and distribute completed products. Instead, Defendants have used a large share of contributions for Defendant Monahan's own personal purposes, such as making bitcoin purchases and ATM withdrawals and paying off personal credit cards; for marketing efforts to raise additional funds from consumers; and for other business ventures. Defendants used a small fraction of the funds to send individual items – such as charging cables – to some consumers in order to string Indiegogo and consumers along while Defendants raised additional funds, but

have not provided a single completed product to any consumer who contributed to the campaigns.

29. Hundreds of consumers have complained about Defendants' failure to produce the products. Some consumers have also complained that Defendant Monahan sent threats to try to silence their criticism, including by telling one consumer that he knew where the consumer lived and had other personal information about the consumer, and by threatening to sue another consumer and his employer for libel and slander. Only a small number of iBackPack consumers have received refunds, and most of those were given by the crowdfunding platform when a consumer requested a refund within a certain number of days after the contribution was made. Defendants have taken steps to refund many of the consumers who contributed to the POW and MOJO campaigns—which combined represent less than 2% of the funds raised by Defendants—only after receiving from the FTC a draft complaint of this action.

30. Defendants emptied their corporate bank account and ceased communications with contributors in 2017. Additionally, Defendants have taken down their website, www.ibackpack.co, and the iBackPack Facebook page, and emails sent by consumers to Defendants have been returned as undeliverable. To this day, Defendants have not used the funds primarily for development, production, completion and distribution and have yet to provide a single completed product to any consumer who contributed to the campaigns.

## VIOLATIONS OF THE FTC ACT

31. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

32. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

33. Through the means described in Paragraphs 9 to 30, in connection with the promotion of the crowdfunding campaigns, Defendants represented, directly or indirectly, expressly or by implication, that Defendants would use the money obtained from consumers through the crowdfunding campaigns primarily for the development, production, completion, and distribution of the products promoted by those campaigns.

34. In truth and in fact, Defendants have not used the money obtained from consumers through the crowdfunding campaigns primarily for the development, production, completion, and distribution of the products promoted by those campaigns.

35. Therefore, the making of the representations as set forth in Paragraph 33 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

36. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

37. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to preliminary injunctions and an order freezing assets;

B. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: May 6, 2019

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

 /s/ Patrick Roy
Patrick Roy, Attorney-in-Charge
D.C. Bar # 1023521
S.D. Texas (seeking admission *pro hac vice*)
E-mail: proy@ftc.gov

Daniel O. Hanks
D.C. Bar # 495823
S.D. Texas (seeking admission *pro hac vice*)
E-mail: dhanks@ftc.gov

Federal Trade Commission
600 Pennsylvania Avenue N.W., CC-10232
Washington, DC 20580
Telephone: 202-326-3477 (Roy); -2472 (Hanks)
Facsimile: 202-326-3768

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Federal Trade Commission

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patrick Roy and Daniel Hanks, Federal Trade Commission
600 Pennsylvania Ave NW, Mail Stop CC-10232, Washington, DC
20580, (202) 326-3477

## DEFENDANTS
iBackPack of Texas, LLC, and
Douglas Monahan

County of Residence of First Listed Defendant   Galveston
*(IN U.S. PLAINTIFF CASES ONLY)* United States Courts
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
       THE TRACT OF LAND INVOLVED.   Southern District of Texas
                                     FILED

Attorneys *(If Known)*

MAY 06 2019

David J. Bradley, Clerk of Court

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☒ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 45(a)
Brief description of cause:
Unfair or deceptive acts or practices

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 05/06/2019
SIGNATURE OF ATTORNEY OF RECORD: /s/ Patrick Roy

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE