UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 0 5 2019

David J. Bradley, Clerk of Court

| | |
|---|---|
| Federal Trade Commission, | |
| Plaintiff, | Civil Action No. 3:19-cv-00160 |
| v. | Judge George C. Hanks, Jr. |
| iBackPack of Texas, LLC, *et al.*, | Magistrate Judge Andrew M. Edison |
| Defendants. | |

## ANSWER

Pursuant to 16 C. F. R. 3.12, Respondent iBackPack ("IBP") hereby answers the Federal Trade Commission's Complaint ("Complaint"). Except as otherwise stated herein, IBP and Douglas Monahan deny each and every allegation of Plaintiff's Complaint, except those allegations expressly admitted below. The monies provided by the crowd funding campaign were used to design, develop, manufacturer the bag itself as well as dozens of additional products. Over five different sizes of batteries were selected, fans to attach to the batteries, batteries that doubled as night lights and much more. The straps which hold the backpack in place were redesigned over six different times alone. Hidden pockets were created on the front and back of the shoulder straps such that credit cards and cash could be held. Special Velcro was added so the users would be able to hold their smartphones in place while walking to class were added. At the request of the backers a special hood was created, pockets designed to hold same so that no one would become

1

wet in the rain. In order for the bag to be protected in deep puddles, special rubber plates were installed on the bottom of the bag. The polyurethane fabric chosen to make the bag itself is of the highest grade possible. The monies were spent to design custom Velcro holders in order to keep the charging cables free from becoming entangled with other items in the backpack. The bag was designed to be approved by the Department of Homeland Security, strictly following their requirements. Special locks were installed on the iBackPack such that passengers carrying their bags on airlines would be able to move through security faster. Our teams explored the ability for backers to receive CLEAR passes so they would be able to have expedited clearance on airlines. Monahan halted the product of the bags to ensure the metal zipper fobs were replaced with those covered by heat resistant rubber to ensure those opening the bags during extreme heat would not have their fingers burned. The zippers chosen to be included are the most expensive but the highest quality possible due to Monahan's adamant design requirement for the zippers to not jam. The bag size was increased three separate times at the request of the iBackPack community to ensure it would hold all of a students books as well as an iPad and two notebook computers. Additional time and money was spent to ensure the iBackPack would charge both iPhone and Android Smartphones. A team of four mobile application developers designed a mobile application from scratch which contains over one hundred individual screens. The mobile application design costs alone totaled tens of thousands of dollars. The mobile app features both augmented reality and extensive GPS location features. All of these features and images were provided to the FTC and ignored. The FTC's storyline seems to be that Monahan raised the $800,000 dollars and took off

for Tahiti to drink cocktails while sitting by the beach. This is hardly the case. Monahan did not take a single vacation throughout the past four years of development efforts. Monahan did not spend any of the monies for any personal items. Of course, he received a stipend salary for his effort but his stipend salary was a pittance compared to his income at his company Sunset Direct, Inc. The FTC refuses to acknowledge the Monahan has received numerous awards for innovation and growth including making to the #28 position on the Inc. 500 List, being named the Fastest Growing Company in Austin per the Austin Business Journal for two years - # 5 and #7 respectively. He has successfully led a company with over 350 employees which he started on his credit cards and a $5,000 prepayment check from his first company. Monahan has experience designing sales and marketing campaigns for Symantec, IBM, Intel, Oracle, Mitsubishi, Cisco, ATT, Sprint, Google, Trend Micro, NEC, Canon Computer Systems. He has long term relationships with the largest computer hardware and software distributors in the world – Ingram Micro. His plan all along has been to use the $800k raised as the first monies toward building a large high tech luggage company a dream he continues to strongly believe in. His apps designed for the iBackPack were among the first to believe and endorse the blockchain and payment capabilities of bitcoin. When designing the iBackPack he strictly followed the standard operating procedures he learned from his computer customers. He had been making millions of dollars per year, receiving over $1.5 million dollars per month. The idea that he would abscond with $800k is ridiculous. If he has any intention of stealing the monies, why would he have put his name on the campaign boldly and prominently, why would he have provided his personal cell phone and maintained

communication, personally leading the campaign. Monahan spent the monies as he told the backers he would. The FTC's claim will be demonstrated to be a boldface untruth. The iBackPack and Monahan stand by their product. While he recognizes there have many problems in the crowd funding space – he is not the poster child of the FTC of a campaign that abuses the trust of the backers – but instead quite the opposite. If anything he can be accused of it is going above and beyond and overpromising the first backers what was physically and financially responsible to deliver to them without the company loses monies. He has always believed in supporting the first backers and has no problem with losing money for those early backers. If the FTC would simply close this lawsuit and allow him to continue manufacturing the iBackPack it would best serve the US consumers says Monahan. Monahan has thus far chosen to represent himself pro se; however is seeking qualified attorneys with experience in crowd funding and licensed to practice in the US Federal District Courts. In summary, the monies were spent toward the design, development, manufacture and distribution of the iBackPack.

1. Agreed.

## JURISDICTION AND VENUE

2. Agreed.

3. Agreed.

4. Agreed.

5. Agreed

6. Agreed.

7. Agreed.

8. Agreed.

9. Admitted in part. Denied in part. First sentence. – Agreed; however, the contributors for two of the campaigns have all received a full refund of their monies. Second sentence. Defendants did use the funds primarily to develop, product, complete or deliver those products. Monahan spent five months writing the FTC over thirty detailed letters, providing photos of the iBackPack being tested, designed, and produced. The FTC refused to answer any of Monahan's letters. Monahan sent dozens of PDF files with embedded videos and photos of the iBackPack. He also sent the FTC photos of the pocketed to hold the Kevlar plates. Monahan spent a great deal of time working with the Chinese military toward the identification of the Kevlar materials best suited to the iBackPack. Monahan hired a photographer to visit Shenzen, China factories and evaluate and grade their capabilities. These photos and explanations were given to the FTC, to no avail. Monahan hired a team of twenty-five designers and custom designed the iBackPack from scratch. Monahan participated in the design portion extensively, even demanding the cotton threading be changed to include nylon fishing lines – thus building a backpack he was confident would be as good as Hartman Luggage. He spent some of the monies on identifying shoe repair shops throughout the United States to be responsible for the repair of the iBackPacks. Best Buy, Penny's, Amazon and all other retailers were contacted and expressed a great deal of interest. Newsweek Magazine wrote an article features the backpack and local television stations aired stories about the

innovative new iBackPack. The FTC's claim makes it sound like there was no effort to create the iBackPack and this is absolutely not true. The monies were spent to create the most revolutionary backpack available in the world – and it was achieved. As Donald Rumseld, Former US Secretary of Defense, has stated "It is the Unknown Knowns and the Known Unknowns that can kill a project." His statement holds true for the iBackPack except for the fact the iBackPack has not been killed. The company remains open and Monahan undeterred with by FTC's claims. There are iBackPack backers who have refused to accept a refund, instead holding out for the product. The iBackPack is a special product. Backpacks can be purchased at any Walmart worldwide, they can be ordered through Amazon, but there is no backpack that contains as many innovative and creative features as the iBackPack. Monahan and his team of designers contacted many Shenzen China bag manufacturing plants, battery aggregators and asked the backpack backers what features they would want included. It could be claimed the iBackPack's engineering team was excessive in its efforts toward listening to the wishes of the community, rather than ship a product as originally created, instead additional features such as Kevlar plates for bullet resistant protection were added, TSA locks were added, compasses added, the pockets were changed multiple times to include holes for the cables to protrude. Special USB ports were installed on the outside of the bag itself so that one USB charging cable would be able to charge up to four notebook computers and over fifteen batteries simultaneously. The monies were spent evaluating wireless charging plates so the backpack owners would be able to merely drop the backpack on a plate when they came home and the electronics would be fully charged overnight. For the FTC to claim the

iBackPack and Monahan did not spend the monies for the development, production and distribution of the product is ludicrous. Third sentence. Indiegogo was responsible for all refunds. Hundreds of individuals received refunds via the Indiegogo system. The Indiegogo operation included the expertise and experience to process any refunds as well as their relationship with credit card processing companies such as master card and visa. Monahan's communication was limited, restricted due to numerous hospitalizations including four weeks nonstop in the Intensive Care Unit of St. David's Hospital. In late 2019, Monahan maintained communication with hundreds of backers including refunding all of the monies contributed.

10. Agreed

11. Agreed

12. Agreed

13. Agreed

14. Agreed

15. Agreed

16. Agreed

17. Agreed

18. Agreed

19. Agreed

20. Disagree

20. a) Agreed, b) Agreed, c) Agreed

21. Agreed in parts. Disagree in parts. It is a supposition, or guess, or self-made reality

7

by the FTC to state "in an efforts to avoid losing their fundraising privileges. Indiegogo approach Monahan and urged him to use the platform vs. traditional venture capital. Udayon, Indiegogo's represent assured Monahan the IGG platform could generate millions of dollars in capital and help build a user base simultaneously. It is true a factory had been selected, the staff trained and the iBackPack BETA units were being manufactured with full production. The FTC has been provided with dozens of videos of the multiple Chinese factory in full production mode. Monahan created a YouTube channel were it uploaded same. The number of actual recipients chosen for BETA units was not yet finalized. Thousands of products were shipped to backers as part of the BETA program. Some BETA users have carried the iBackPack continuously over the past four years and claim it is the best backpack they have ever used. There were a number of problems associated with Lithium iOn batteries manufactured by Samsung and whose batteries were included in phones, pcs and notebook computers by Panasonic, Sony, Dell, HP and others. Consumer Reports issued dozens of warnings about lithium ion batteries overheating, catching fire and possibly exploding. A large number of Lithium iOn manufacturers began recalling substantial numbers of the products due to fire and explosions. Samsung's recall totaled in the millions at a cost to Samsung of over $15 Billion. Samsung's destruction of many millions of Lithium iOn batteries stopping production completely on select line caused the supply to drop, thus raising the prices of batteries worldwide. Due to the danger to consumers, iBackPack made an announcement to the four thousand backers regarding the dangers of shipping Lithium iOn batteries. While many backers wished for the iBackPack to ship the products to them and bear the

risk of exploding batteries, the iBackPack felt it was a) dangerous, b) in violation of FTC and other government agency rules and regulations and c) against common sense. The price to ship batteries rose dramatically. Airline shipments were temporarily discontinued. We believe the majority of airlines still have banned Lithium iOn products to be shipped while passengers on onboard the aircraft. Douglas Monahan's life was threatened, told he would receive drive by shootings and other personal dangers if he did not ship the iBackPack on-time. It is true the iBackPack became delayed due to airlines refusing to accept Lithium iOn batteries on passenger carrying flights, FedEx, Airborne and DHL substantially increasing their rates to more than triple the previous pre-explosion rates. Numerous airlines banned all smart luggage from their carry on luggage. All carriers whether by land, sea or air were quite concerned regarding the unexplained and unfortunate explosions and fires Lithium iOn batteries were experiencing beginning August 2016 through June 2016. Monahan remains committed to the backers and the project. He sees this litigation as a huge stumbling block to the long term vision of the iBackPack's national and international distribution plans. The iBackPack's Kevlar plates were added shortly after the San Bernadino Mass Shooting. Monahan feels all children should have adequate protection against active shooters such as that of Sandy Hook.

22. Agreed

23. Agreed

24. Agreed

25. Agreed

26. Agreed

27. Agreed

28. Disagree

29. Agree in part and Disagree in part We have asked the FTC to program the number of consumers who complained but have yet to receive a number, thus we cannot agree or disagree with the first sentence. Monahan made himself available to the entire community of backers, distributing his personal cell number and fielding calls night and day. He held dozens of video conference calls with up to twenty backers at a time. During these calls, he urged backers to be patient. While the iBackPack feature set continues to be revolutionary, Monahan vehemently disagrees with the FTC's portrayal. The FTC's narrative is one-sided, ill-informed and flat-out wrong claims Monahan. The iBackPack is revolutionary in a great many ways thus there is/was great demand. Monahan and iBackPack staff members turned down hundreds of requests for order the product after the ability to back the product via Indiegogo was terminated. He informed the backers the proprietary technology would remain the property of the iBackPack and would not sell it separately. The apps were designed for the iPhone and Android platform. The feature set created over four years ago is still cutting edge in 2019. There were a number of heated conversations with contributors including one claiming he would shoot through Monahan's front door, shoot him, stab him, behead him, kill his parents and siblings, still others claiming to do anything and everything to ruin his reputation and some in Austin calling at all hours of the night, multiple times leaving messages stating they know where Monahan lived and would be coming over to "give him a good whooping" Monahan does not remember any attempts to silent their criticism. In fact, he understands the

disappointment of backers and urged them to be patient for their own safety and security. He stated to many backers "It is just a backpack and not worth you, or your family or friends dying – be patient."

30. Disagree. Monahan was hospitalized in the Intensive Care Unit of St David's Hospital in Austin for almost thirty straight days for deep vein thrombosis, pulmonary embolisms and necrosis of the right leg. Monahan came close to losing his right leg to the thin terrible, painful ordeal. While in the Intensive Care Unit Monahan attempted to have a high speed internet connection installed, computer equipment hooked up to same and was stopped by Hospital Security. The hospital refused to allow him to connect his Macintosh and PC servers through a direct connection. Physicians insisted he focus on recovery. While in the hospital Monahan became addicted to prescribed opiates. Monahan stopped taking all narcotic pain medicines after the FTC file their lawsuit in US Federal District Court. Shortly upon leaving the hospital Monahan fell, broke his left leg completely through and required his leg to be "pinned" onto the hip for a six week period. The pinning did not hold and Monahan was required to undergo a complete hip operation thus extending the health care fiasco for an additional five months. He required constant care, heavy narcotics and was unable to work due to pain and discomfort. Despite all of the personal health issues Monahan has steadfastly stood by his commitment to all backers. His health has returned and he is excited about getting "back in the saddle" and getting the iBackPack distributed on an international and national basis. The crowdfunding efforts were simply the first step toward a national push to introduce the iBackPack – not the end-game.

31. True

32. True

33. True

34. Disagree. Monahan will be providing the courts with financial statements that demonstrate that not only was all of the money contributed from crowd funding spent on the project as stated but Monahan further invested hundreds of thousands of his own personal funds. The monies were spent toward the design, development and distribution of the iBackPack per the Agreement with the crowd funding backers. Monahan provided his personal phone number to the entire backpack backer group communicated with as many backers as possible regarding the status of the iBackPack. The company continues its operations and plans to distribute the iBackPack to all consumers regardless of the FTC litigation.

35. Disagree

36. Disagree.

37. Agree.

## Prayer for Relief

Agreed. FTC has these rights.

/s/ Douglas Monahan            __August 2, 2019__      August 2, 2019
Douglas Monahan, Defendant, *pro se*                         Date

## **CERTIFICATE OF SERVICE**

I, Douglas Monahan, attorney pro-se, hereby certify that on August 2, 2019, I caused to be served true copies to the following counsel for Plaintiff of the Answer to the FTC Complaint by first-class mail.

                                                 Attorneys for Plaintiff
                                               Federal Trade Commission

:

| | |
|---|---|
| Patrick Roy | Daniel Hanks |
| Federal Trade Commission | Federal Trade Commission |
| 600 Pennsylvania Ave NW | 600 Pennsylvania Ave NW |
| Mail Stop CC-10232 | Mail Stop CC-10232 |
| Washington, DC 20580 | Washington, DC 20580 |
| D.C. Bar # 1023521 | D.C. Bar # 495823 |
| 202-326-3477 (phone) | 202-326-2472 (phone) |
| 202-326-3768 (fax) | 202-326-3768 (fax) |
| proy@ftc.gov | dhanks@ftc.gov |

                                             <u>Defendant Attorney Pro Se</u>
                                             /s/ Douglas Monahan
                                             Douglas Monahan
                                             409 Colonial Drive.
                                             Friendswood, Texas 77546
                                             512-281-6533
                                             Doug.monahan@ibackpack.net

**FROM:**

Doug Monahan
409 Colonial Dr.
Friendswood TX 77546

**TO:**

Susan Gram
Case Manager
Judge George C. Hanks
601 Rosenberg, Room 411
Galveston, TX 77550



U.S. POSTAGE
$1.45
CPU



United States Courts
Southern District of Texas
FILED
AUG -5 2019
David J. Bradley, Clerk of Court

ReadyPost

Utility Mailer
10 1/2