UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

*March 30, 2020*

David J. Bradley, Clerk of Court

FEDERAL TRADE COMMISSION,

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

IBACKPACK OF TEXAS, LLC, a limited liability
company, and

DOUGLAS MONAHAN, individually and as an
officer of iBackPack of Texas, LLC,

Defendants.

Case No. 3:19-cv-00160

## OBJECTION TO SUMMARY JUDGMENT MOTION BY FTC

I humbly ask the Court to deny the United States Federal Trade Commission request for

Summary Judgment. I welcome the opportunity demonstrate to the Honorable Andrew

Edison, Magistrate Judge for the 5th Circuit District Court in Galveston, Texas the

iBackPack in person. I am confident the Judge, ladies and gentlemen of the jury, and even

the Plaintiff Attorneys will be thoroughly impressed. There is no other backpack, briefcase of

luggage like it. The iBackPack is unique and patentable. My invention qualifies for patents

under the U.S. Patent Act Section 101. It is statutory, new, useful and nonobvious. The

iBackPack has received over four thousand orders. All designs are finished, materials

formulated and chosen. Circuit boards, batteries, telecommunications are fully designed.

## THE IBACKPACK

Inventor and Creator (Monahan) is Defendant. The Plaintiff is the US Federal Trade Commission (FTC). Monahan has created a sensational new piece of luggage. He plans on releasing the product as quickly as this lawsuit with the FTC ends. The FTC has filed for summary judgment and this motion objecting to same. Monahan plans on filing patents with the US Patent office. The designs, are qualified under the US Patent Act 101. We have filed a Motion to Object to the FTC's Motion For Summary Judgment.

The iBackPack is no ordinary backpack. Each bag is so fine it stands as a symbol of excellence. Once released, it will be synonymous with quality, fine engineering and durability. Each bag is lightweight, distinctive and fashionable, available in high density nylon. It is an excellent choice for forward thinking travelers.  The iBackPack includes design innovation, product performance and quality craftsmanship. It is filled with high performance features.

Monahan (Inventor) designed the iBackPack from scratch. It is a backpack, thus included in the luggage category. The BackPack is no ordinary piee of luggage. It includes a number of the most powerful batteries built today. The internal batteries are lightweight and powerful. There are multiple 50,000 mAh batteries strategically placed throughout the bag. Included in iBackPack is the "Communicator" - it has all of the features of a smartphone but includes a rollable ultra-thin display screen.

## FTC PRIMARY CLAIM MAKES NO SENSE

The FTC invented the wording "have not used the funds primarily for development, production, manufacturing and distribution is a joke. It is falsely based on the FTC someow believing the Terms of Service for Indiegogo and Kickstarter and a) not understanding the TOS, or ) assuming Monahan would not read the TOS and be duped, or c) who knows what the FTC was attempting to do; however, whatever the  purpose it is not logical and pure fiction. Monahan feels that misstatement twenty five times in their Summary Objection qualifies for their Motion For Summary Judgment to be denied. For such an important request to the Court it is inconsistent with their education and experience. Monahan is pro se, and he found the error.

Page 8., 28, 1 -Despite Defendants' repeated assurances, Defendants have not used contributions to produce and distribute completed products. Monahan objects - this is not relevant or pertinent because Indiegogo nor Kickstarters TOS require the products to be made with contributions. Monahan objects, this statement is both irrelevant and false.

Page 9, To this day, Defendants have not used the funds primarily for development, production, completion and distribution. Monahan objects - this is not relevant or pertinent because Indiegogo nor Kickstarters TOS require the products to be made with contributions.

## DEFENDANT OBJECTS TO FTC PRIMARY CLAIM

There are several dozen claims throughout the MFSJ using the same, or nearly identical verbiage. It appears the FTC was under the impression in the Terms of Service for Indiegogo and Kickstarter was a requirement the contributions be used for "developing, producing, completing and distributing" the products represented on their site. This is not true. There is no requirement for anything close to that meaning on Indiegogo and Kickstarter only requires the monies contributed to be used in a "professional" manner. There are a great many times the FTC has used this verbiage and Monahan feels this fact alone qualifies the Court to deny their Motion For Summary Judgment. It demonstrates the FTC has a poor understanding about CrowdFunding in general and even less about the specific legalities. Monahan urges the Court deny the Plaintiff's request.

Below are many of the Plaintiff's false representations of the iBackPack's obligations: Page 4, 14, 4 & Page 5, 1, Defendants also made specific representations that the funds were being used to develop, produce, complete, and distribute the product, for example by stating that refunds were not available because consumers were "contributing to a work-in-progress." Defendant objects. Just because there is a work in progress does not mean the money was backers. Monahan has contributed a great deal of his personal funds, and lost over $500,000 of his own monies.

Page 5, 17, 5 -Defendants also made specific representations that the funds were being used to develop, produce, complete, and distribute the product, Monahan objects - this is not relevant or pertinent because Indiegogo nor Kickstarters TOS require the products to be made with contributions.

OBJECTIONS TO NONSENSE

MFSJ- Page 1, 1, 3   falsely claiming that the funds would primarily be used to develop and produce a high-tech backpack. Monahan objects. This statement is false.

MFSJ 3:, 4 - 6 Falsely representing to consumers that they would use funds obtained from their four crowdfunding campaigns primarily to develop, produce, complete, and distribute certain products to consumers.   Monahan objects. This statement is false

MFSJ Page 6: C, i  - Defendants Launched Crowdfunding Campaigns Representing They Would Use Campaign Funds Primarily to Develop, Produce, Complete, and Distribute the Advertised Product.Monahan objects. Statement is false.

MFSJ Page 10: 2 Funds Primarily to Develop, Produce, Complete, and Distribute the Advertised Products Were False. Monahan objects. Statement is false

MFSJ: 19:2 First, Defendants admit that they represented to consumers that they would use the funds raised by their crowdfunding campaigns primarily to develop, produce, complete, and distribute the products promoted by those campaigns Statement is false.

4

## FTC DECLARATIONS PROVE MATERIAL FACTS FOR MONAHAN

The FTC garnered consumer declarations from Charles Aguillon, Billy De Almeida, Aaron Gunderson, Max Levine, Patrick Miller, Barry Muha and Brice Twombly.  Based upon these seven individuals, who all contributed funds to the iBackPack campaign the FTC claims "Consumer declarations affirm that this repreentation was material and affected consumers' decisions to back the campaigns.

The FTC claim "Consumer declarations affirm that this representation was material and affected consumers' decisions to back the campaigns". According to the National Institute of Standards and Technology (NIST) [700] a sample size of 7 to represent a total of 4000 requires a minimum of 2% to be even considered.[700] The NIST's page can be confusing for some. The website Survey Monkey[701] explains how to sufficiently determine a realistic sample size. Four elements are needed: a) total group size - in iBackPack we can round down to 4000, b) a confidence level (95% is standard), c) a margin or error (5% is standard maximum) = 351.[701] If the FTC had provided 351 consumer declarations it would have be a material fact.

In order for a sample set of any size to represent any size group, logic and common sense dictates the sample set must be a random set and their answers must be not unduly swayed in any way. Defendant feels the consumer declarations provide a preponderous of evidence, and high probability these seven individuals were coached by Patrick Roy, Attorney, FTC.  Defendant will explain in detail on next page.

---

[700] https://www.itl.nist.gov/civ898/handbook.pre/section2/prc2.2.htm
[701] https://www.surveymonkey.com/mp/sample-size-calculator/
[501] https://www.surveymonkey.com/mp/margin-of-error-calculator/
[502] https://www.surveymonkey.com/mp/sample-size-calculator/ and affected consumers' decisions to back the campaigns.

## COACHED DECLARATIONS

"The evidence in this case—which includes Defendant's pleadings, testimony, communications, websites, and banking and financial institution records, as well as declarations from consumers and two individuals who performed work for iBackPack of Texas—establishes that there are no genuine issues as to any material fact, and that the FTC is entitled to judgment as a matter of law.

The FTC approached 6 backers and 1 contract employee for iBackPack to conduct a poll to provide proof to this Court the iBackPack deception claimed by the FTC was material and affected consumers decisions to back the campaign. All of the "pollees" had communicated with Mr. Patrick Roy in the past. All knew Mr. Roy was/is in active litigation against iBackPack. All were provided with special FTC Affadavit/Declaration letterhead on which to write their answers to the questions Mr. Roy sent to them. They were coached, essentially told exactly what the FTC was looking for their answer to be. It's obvious they all coached as to what to put in their declaration due to the very similar wording - especially the use of the word THAT. The word "that" is incorrectly used in all 7 of these Declaration 4350 A #2 affadavits. Charles Aguillon, Billy De Almeida, Aaron Gunderson, Max Levine, Patrick Miller, Barry Muha and Brice Twombly.

---

500 Dkt. 1 (Complaint) ¶¶ 5, 35; Dkt. 18 (Answer) ¶¶ 9, 33. Consumer declarations affirm that this representation was material and affected consumers' decisions to back the campaign. See, e.g. Ex. 3, Declaration of Charles Aguillon ("Aguillon Decl.") ¶ 3; Ex. 5, Declaration of Billy De Almeida ("De Almeida Decl.") ¶ 5; Ex. 6, Declaration of Aaron Gunderson ("Gunderson Decl.") ¶¶ 2-3; Ex. 7, Declaration of Max Levine ("Levine Decl.") ¶ 3; Ex. 8, Declaration of Patrick Miller ("Miller Decl.") ¶¶ 2-4; Ex. 9, Declaration of Barry Muha ("Muha Decl.") ¶ 2; Ex. 10, Declaration of Brice Twombly ("Twombly Decl.") ¶ 3.
501 https://www.checkmarket.com/sample-size-calculator/#sample-size-calculator ,

## MISLEADING CLAIM

"FTC STATE: Monahan regularly used funds from the iBackPack of Texas corporate account at Plains Capital Bank for personal purposes including: More than $97,000 to pay off his personal credit cards; •Two wire transfers totaling $275,000 to a bank account jointly held in the names of Monahan and his mother; Over $66,000 in cash withdrawals; More than $48,000 to purchase bitcoins; Over $69,000 in debit card payments to business establishments that were clearly for personal use, including liquor stores, dry cleaners, and the office of Monahan's dentist."

## APPEARANCE NOT FACT [500]

Kathleen Nolan, an FTC staff member, began investigating the iBackPack in May of 2017.

23.     I reviewed the account for instances in which Monahan **appeared** to be converting funds to his personal use. As described below, I identified the following totals:

•        $97,391.24 in personal credit card payments[501]

•        $66,161.00 in ATM Withdrawals[502]

•        $48,281.50 in Bitcoin from Coinbase.com[503]

•        $69,159.55 in debit card payments for restaurants, liquor store purchases, groceries, dental expenses, etc.[504] Monahan objects to the fact Ms. Nolan's feeling that there was an appearance of conversion of funds was repeated almost verbatim in Plaintiff's MFSJ. Plaintiff's received copies of the iBackPack's General Ledger created by Ronald W. Meyer, Certified Public Accountant in late November and December. FTC ignored evidence prepared by a CPA and included claims based upon "appearance" vs. fact.

## DECEPTION THROUGH OMISSION

**"Over a multi-year period,** Monahan regularly used funds from the iBackPack of Texas corporate account at Plains Capital Bank for personal purposes including: to pay off more than $97,000 in **legimate** iBackPack business expenses billed to his pay off his personal credit cards;  **Monahan had loaned iBackPack hundreds of thousand dollars.** Two wire transfers totaling $275,000 to a bank account jointly held in the names of Monahan and his mother **repaid the loan.** Over $66,000 in cash withdrawals; More than $48,000 to purchase bitcoins**;  was sent to China for iBackPack manufacturing.** Over $69,000 in debit card payments to business establishments that were clearly for personal use, including liquor stores, dry cleaners, and the office of Monahan's dentist."

The FTC had received Monahan's bank account statements months before filing for Summary Judgment. The true picture of the finances was omitted and the "gut feeling" of Kathleen Nolan, an FTC staff member, was used. Monahan finds this ironic considering the role of the FTC and its significant knowledge regarding the ommission of fact can unduly influence readers.

Monahan has been using one of Ronald W. Meyer, Certified Publicate Accountants PLLC staff for over twenty five years. Each of his CPA's and the firm are licensed by Texas State Board of Public Accountancy Every penny Doug Monahan or his companies generate and spend are allocated according to Generally Accepted Accounting Principles (GAAP).

## CROWDFUNDING SITES REQUIRE BEST EFFORTS

**The FTC claims:** Defendants Launched Crowdfunding Campaigns Representing They Would Use Campaign Funds Primarily to Develop, Produce, Complete, and Distribute the Advertised Products. This claim is not true. The iBackPack never advertised, promoted or discussed their product in that way. "Develop, Produce, Complete and Distribute the Advertised Product" were not part of the iBackPack mantra.

However, "you accept the risk that the project may experiences changes, delays, unforeseen challenges, and it's possible that a project you fund might not come to fruition." Indiegogo is not able to mediate disputes between customers, including those related to refunds or the fulfillment of perks. If you are unable to arrive at a resolution, you may also use our Terms of Use in a U.S. court of law, should you choose to take any legal action against the campaign team.

Note: This article does not constitute as legal advice.  We recommend for you to consult with your attorney before taking any legal action" The pose above is another compelling piece of proof that backers are aware there is a chance they will not receive a perk. Backers are repeatedly told, on nearly every page, "you aren't buying a product, there are risks, you need to study the campaign, Indiegogo does not guarantee perks, see your attorney, file suit in court, etc. The Help and Support has huge header stating "Will I get my Perk? Where is My Perk" It doesn't say When will I get my Perk? because it is understood on crowdfunding there is a gamble. The FTC filing suit against iBackPack and Monahan is

19

## IGG & KS WEBSITES CLEARLY STATE THE VALUE OF PARTICIPATION AND

## REINFORCE NO PRODUCTS ARE GUARANTEED

TERMS OF USE: Campaign Owners can offer gifts or rewards in the form of tangible items or intangible services to contributors. Perks are not offered for sale. Indiegogo makes no represenations about the quaity, safety, morality or legality of any Campain or the truth or accuracy of User Content posted to the services. Indiegogo does not guarantee that contributions will be used as promisd that Campaign Owners will deliver Perks or that he campaign will achieve its goals.

However, if a project is **unable to deliver the perks** or promises made in the campaign. . . ,

**even if the project falls through.**

"Supporting a crowdfunding idea on a platform like Indiegogo means you are helping a work-in-progress project, idea or cause." The backers may have learned more from the iBackPack project than others due to its many failures. The FTC is not understanding, or considering the concept of crowdfunding.  Indiegogo is where new launches. One of the amazing parts of crowdfunding is pitching in and helping ideas you'd like to see come to life!  It's very rewarding to see projects that you fund go from idea phase, to seeing the stages of its development, and **(if all goes according to plan)** see the project be successful. The Indiegogo site, as Kickstarter's speaks very little about receiving a product as the reward

## iBACKPACK WAS A SMASH HIT FROM DAY ONE.

There are a wide variety of available platforms to learn from and Indiegogo specializes in up and coming new technology introductions. There are no fees or charges necessary to read about each project; however, if a student wishes to learn about any individual project they are encouraged to make small donations - generally les than $300. For their $50 to $300 contribution they are able to participate in any product they wish and be as engaged as suits their personality.

A high-technology backpack immediately grabbed a great deal of attention. Within a few months over four thousand individuals enlisted. Their contributions, monetarily, exceeded $800,000. Monahan (Inventor) broke the four thousand eager to learn young entrepreneurs into a number of different categories. These categories included a) the bag itself such as which type of material would be ideal,  b) pockets and types of fabric and style to use for each, c) shoulder straps, d) battery electronics, e) flashlights, f) telecommunications, g) waterproofing, h) kevler aka bulletproof shields, h) rain and water protection, i) the iPhone and Android app team, j) the snowbirds - those individuals who hail from Alaska, Coloradoo and Canada, k) the mountain biking and hiking team, l) cables, neworking systems, m) external charging systems

1 BExhibit 1, Coolest Cooler https://www.kickstarter.com/projects/ryangrepper/coolest-cooler-thats-actually
7 Exhibit 1  2 - 5 Udayan Sinha contract dated Aug. 3, 2015 special incentives, home page placement, ad budget and extras
8 By sFind the date of first ads on Facebook  - put in an exhibit
4 By sTry to find link to facebook fan page and put it and number of fans in exhibit
5 By sFFind date of udayon giving him and signing contract
6 By sFind the date of first ads on Facebook  injunctive and monetary relief identical to that sought here, against Defendant

## ACTIVE COLLABORATIVE PARTICIPATION

Great for Moms.The iBackPack is designed to last thirty years with daily wear and tear. It is affordable at $199.There is a glow-in-the-dark compass on stainless steel carbineer, TSA security lock and ultra large TSA approved labels provide faster movement through aiport security. It includes five key fobs with a toll free 800 number. The bag is spacious -  you can c

Super for Road Warriors. arry two 17 inch notebook computers, a 15 inch iPad, full sized camera and multiple phones. Instead of using cotton threads, the bag uses nylon fishing wire to ensure it won't tear despite oversized objects, the nylon fishing line lasts a lifetime, thus providing up to thirty years of service with daily use. Pockets galore, each with see through stretchable black mesh, largest

Fantastic for Sports Fans. pocket has top rated zipper + keys,  Water bottle mesh pocket on outside left and mesh spare change and knick nack pocket on right, iPhone or Android velcro strategically placed allows users to keep phone conveniently on the shoulder straps, Strong 2 inch band with clasp allows users to keep bag in place while

Pockets for Smelly Gym Socks. gging or running, The nylon for the bag is water resistant and high caliber/anti cutting or slice feature, The bag includes a 6 foot 3/8th inch roll of Velcro, Custom designed 1/2 inch curved, clipped cable holders line the inside walls to keep battery and data cables safe.

## THOUSANDS OF CONTRIBUTORS

n) anti-theft systems, o) the hidden pocket team, p) "the protectors"  and many more. Each of these individuals had a great deal of knowledge about their unique tasks, and probably more important was their desire to learn more. Similar to any social or collaborative team there were leaders within each repective team, the de-facto nerd or more nicely put the quiet expert.

These four thousand people contributed tens of thousands of ideas. We used a democrati c voting system to determine which of the ideeas were realistic and cost effective and after many years later wound up with what we are are positive is the very best backpack in the world. Immediately after the San Bernadino Massacre an Active Shooter team was set up. The members of that team were responsible for evaluating and choosig the best way to protect themselves, and others who might be in an active shooter situation such as Sandy Hook or Colombine.

A team of twenty five focused strictly on the shoulder straps. An additional team of twenty five spent their creative power on the mesh pockets used inside. Another team focused on innovative ways to ensure the bag would last thirty years - their best idea was to not use cotton thread and instead nylon fishing wire. We used a collaborate crowd design formula. Thousands of individuals contributed their time, energy and monies toward the creation of the ultimate bag for millenials to boomers

## INTRODUCTION

Donald Rumsfeld, United States Secretary of Defense, January 20, 2001 – December 18, 2006 said "There are known knowns, there are known unknowns. There are unknown unknowns, but there are also unknown knowns. That is to say, things that you think you know that it turns out you did not".[200]  This statement is especially true regarding the iBackPack project.

Over the past several years, Defendant has not yet been able to fulfull their obligation to fulfill the 4,000 iBackPacks. The FTC claiming Defendant's inability to ship the iBackPack yet - proves the Defendant has violated section 5 (c) of the FTC law is false.   Unfortunately, there were known knowns, known unknowns and unknown knowns which have crippled our abilities to responsibly fulfill. Each are discussed in this Motion. This Motion discusses matters of law, disputes and repudiates a great many, if not all "material facts" claimed by FTC. Defendant's have provided best efforts, as pro se attorney, to number each Claim, Dispute and provide footnotes in accordance with the Federal Rules of Disclosure. We thank the Court in advance for allowing us this opportunity and appreciate the Court approving our Motion for Additional Time to sufficiently prepare this document

200  Known and Unknown: A Memoir Paperback – May 29, 2012

6 By sFind the date of first ads on Facebook  injunctive and monetary relief identical to that sought here, against Defendant
7 Exhibit 1  2 - 5 Udayan Sinha contract dated Aug. 3, 2015 special incentives, home page placement, ad budget and extras
8 By sFind the date of first ads on Facebook  - put in an exhibit
4 By sTry to find link to facebook fan page and put it and number of fans in exhibit
5 By sFFind date of udayon giving him and signing contract
6 By sFind the date of first ads on Facebook  injunctive and monetary relief identical to that sought here, against Defendant

## UNKNOWN UNKNOWNS - LITHIUM ION WERE DANGEROUS AND EXPLOSIVE

Jan. 22, 2020  - Office of Security and Hazardous Materials Safety - FAA.GOV [400] . In 2015 the FAA reported 16 fires/explosions/incidents of Lithium iOn batteries in relation to passenger and cargo carrying airlines.  In 2016, as iBackPack predicted, the number increased 300% to 47.  In 2017 the number of dangerous situations increased to 50. In 2018 there wre 45 and thus far in 2020 there are 4.  The FAA 45 page report lists dates, carriers, in-flight and ground crew reports. These issues constricted the transportation supply from China to the US. It lists enhanced security rules & regulations increasing costs.

The FAA  shows how, and why iBackPack's estimated ship date of    September 2016 became impossible. The FAA report, New York Times, Southwest, American, Delta  releases demonstrate the timeline,  increase of air fires, on-ground explosions forcing iBackPack to push the May, 2018 to Sept 2018. Federal Express, UPS, DHL, Samsung, American, Delta and Southwest Airlines. Sept 2, 2016 - New York Times [100] - Samsung to Recall 2.5 Million Galaxy Note 7s Over Battery Fires

Sept 11, 2016 - New York Times [101] - As More Devices Board Planes, Travelers Are Playing With Fire, As More Devices Board Planes, Sept 16, 2016 [102]- US Dept of Transportation, FAA [102] - Air Transport Restrictions for Recalled Lithium Batteries and Lithium Battery Powered Devices - Oct 10, 2016 [103]- New York Times - Samsung Halts Galaxy Note 7 Production as Battery Problems

100  https://www.nytimes.com/2016/09/03/business/samsung-galaxy-note-battery.html
101  https://www.nytimes.com/2016/09/13/business/as-more-devices-board-planes-travelers-are-playing-with-fire.html
102  http://www.faa.gov/other_visit/aviation_industry/airline_operators/airline_safety/safo
103  https://www.nytimes.com/2016/10/11/business/samsung-galaxy-note-fires.html
104  https://twitter.com/southwestair/status/811013225575837696?lang=en
105  https://www.theverge.com/2017/12/7/16746784/smart-luggage-regulations-american-airlines-delta
106  https://www.faa.gov/data_research/research/med_humanfacs/oamtechreports/2010s/media/201711.pdf
107  https://www.faa.gov/hazmat/resources/lithium_batteries/media/Battery_incident_chart.pdf
108  https://www.faa.gov/hazmat/resources/lithium_batteries/media/Battery_incident_chart.pdf

**MAY 26TH MONAHAN WAS RUSHED TO HOSPITAL FOR EMERGENCY SURGERY AND STAYED IN THE ICU WARD FOR NEARLY A MONTH.**

JiBackpack has an obligation to provide best efforts to meet our contractual agreement with all backers. It was physically impossible for Monahan to do anything while he was in the ICU. Monahan has an inherited rare family gene disorder called Leiden V. It causes blood clots in his legs and lungs. Throughout March, April and May his legs had been bothering him. On May 23rd a large bloot clot lodged in his lower right calf cutting off the flow of oxygen and the leg quickly became necrotic. He came close to an amputation of his right leg. For thirty days Monahan has laid up in the ICU attempting to recover from the emergency surgery. Defendant's feel this period while at the hospital and at home afterwards classifies as force majeur or at least impossibility to perform his contractual obligations. It was when a half a dozen volunteers or contractors began communicating as monahan via email and on chats. Monahan was released from icu and at home recovering when he rolled of his bed, breaking his left femur bone one inch from the hip. On July 4th less than two weeks from leaving the ICU he was back. Bone doctors put metal pins through his femur into his hip, After another six weeks of grueling pain the doctors decided to cut one inch off his femur and give him a full hip replacement. The recovery time was sixty days during which he strained his back requiring six months of inactivity. 2018 - FORBES - Airline Smart Luggage Ban Goes Into Effect - US Airlines Unilaterally Ban All Smart Luggage. If batteries cannot be removed bags are not allowed.

## CROWDFUNDING OVERVIEW

Kickstarter and Indiegogo are the "Coca-Cola and Pepsi" within their market space. Sixty million have participated in Kickstarter programs. Indiegogo brings another 11 million from 323 countries. Why is the CF space continuing to grow?

Their customers are millenialls. They are fickle, have short-attention span. 58% are younger than 35 years old. They are highly educated with 77% having attended college, 61% are college graduates and 20% are working toward their Masters or PhD's. They grew up with Amazon same or next day shipping and epitomize the "I want it now" mentality. Why would such a tech saavy group be attracted to CF?

They know many CF products have no track record,  no yelp reviews, are not yet made, realize there are no guaranteed shipdates, no refunds, no warranties and products aren't guaranteed to work as promised if you get them. Almost all of the products are minor adaptations of ones they could purchase in a store and walk home with them that day. What would compel over four thousand smart, young, upwardly mobile users to contribute to a balk pack? Amazon has hundreds of backpacks, K-Mart, Sears, JC Penney's offer thousands

o a changed their corporate status to a Public Benefit Corporation. has had 60 million active participants with 6 million repeat participants. Indiegogo has 11 million active backers from over 253 countries. We urge the Court to think about why users would participate in a program knowing a) Indiegogo has campaigns with only an idea on a mapkin, bthe products are not completed. understanding of CrowdFunding is antiquated. best to listen to Indiegogo & Kickstarter (Coca-cola and Pepsi in the respective market space.  Crowdfunding is the practice of funding a project or venture by raising relatively small amounts of money from a large number of people, typically via the Internet.15 Crowdfunding transactions typically involve consumers, or "backers," contributing money to a "campaign" that the campaign owner uses to develop and produce a product or products (sometimes referred to as "perks"), which the campaign owner distributes to backers after the products are completed.16d consumers decisions to back the campaign. The FTC the first "Crowdfunding" case to be 1 .

CERTIFICATE OF SERVICE

I, Douglas Monahan, an attorney Pro Se, hereby certify that on March 26, 2020, I caused to be served true copies of my reasserting my Defendant's Objection to Summary Judgment by Plaintiff,

/s/  Douglas Monahan

Houston, Texas

a copy has been served to Plaintiff the FTC attorneys via electronic mail

Patrick Roy
Patrick Roy, Attorney-in-Charge
D.C. Bar# 1023521
S.D. Texas (seeking admission pro hac vice)
E-mail: proy@ftc.gov

Daniel O. Hanks
D.C. Bar # 495823
S.D. Texas (seeking admission pro hac vice)
E-mail: dhanks@ftc.gov

Federal Trade Commission
600 Pennsylvania Avenue N.W., CC-10232 Washington, DC 20580
Telephone: 202-326-3477 (Roy); -2472 (Hanks)
Facsimile: 202-326-3768

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

           v.

IBACKPACK OF TEXAS, LLC, a limited liability
    company, and

DOUGLAS MONAHAN, individually and as an
    officer of iBackPack of Texas, LLC,

    Defendants.

Case No. 3:19-cv-00160

# ORDER

Before me is Defendant Doug Monahan's Motion to Deny the FTC's Motion For

Summary Motion

SIGNED at Galveston, Texas this \_\_\_\_\_ of March, 2020

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

United States Courts
Southern District of Texas
FILED

*March 30, 2020*

David J. Bradley, Clerk of Court

WILLIAM BOSTIC

Case Manager for Judge Andrew Edison

601 Rosenberg, Room 411

Galveston, TX 77550

Telephone: (409) 766-3555 Fax: (409) 766-3549 Email:

william_bostic@txs.uscourts.gov


MOTION FOR OBJECTION TO SUMMARY JUDGMENT:


Mr. Bostic:

Please find enclosed our summary judgment objection to the FTC

The letter has been sent via Fed Ex. I have copied the FTC's counsel via electronic mail

and have attached a certificate of service.

Thank you,

/Doug Monahan

Attorney pro se







Align top of FedEx Express shipping label here.

ORIGIN ID:GLSA   4094663555S
DOUG MONAHAN
409 COLONIAL

FRIENDSWOOD, TX 77546
UNITED STATES US

SHIP DATE: 27MAR20
ACTWGT: 1.00 LB
CAD: 250871495/WSXI3400
DIMS: 8x1x1 IN

BILL SENDER

TO  **WILLIAM BOSTIC**
    **WILLIAM BOSTIC**
    **601 25TH ST**
    **ROOM 411**
    **GALVESTON TX 77550**
    (409) 765-5555        REF:

INV:                      DEPT:

FedEx
Express

E

WED – 01 APR 4:30P
EXPRESS SAVER

TRK#  3914 1745 8050
0201

**43 GLSA**

77550
TX-US      IAH

United States Courts
Southern District of Texas
FILED

*March 30, 2020*

David J. Bradley, Clerk of Court