

UNITED STATES OF AMERICA
Federal Trade Commission
HEADQUARTERS (HQ)

Daniel O. Hanks
Bureau of Consumer Protection
Phone: (202) 326-2472
Email: dhanks@ftc.gov

May 11, 2020

The Hon. Andrew M. Edison, U.S. Magistrate Judge
United States Courthouse
601 Rosenberg Avenue, Seventh Floor
Galveston, TX  77550

**RE:**   ***FTC v. iBackPack of Texas, LLC*, No. 3:19-cv-00160**
  **Court's Authority in Entering Default Judgment**

Dear Judge Edison:

  At a telephonic hearing conducted in March, the Court requested that the Federal Trade Commission ("FTC") provide additional information concerning the Court's authority to enter particular aspects of the proposed order submitted with the FTC's motion for default judgment against defendant iBackPack of Texas, LLC.[1]  Specifically, the Court sought relevant authority on the following:

- First, whether the Court can appropriately determine the amount of the default judgment based on evidence presented through the declaration of FTC investigator Kathleen Nolan; and

- Second, whether the Court can appropriately enter, on default judgment, the compliance monitoring and recordkeeping provisions sought in the FTC's proposed order.

  For the reasons discussed below, the Court has authority to enter both the monetary and injunctive relief included in the FTC's proposed order.

---

[1] *See* Dkt. 36-1 (Proposed Order), Dkt. 36 (Plaintiff's Motion for Default Judgment).

## A. The Amount of Judgment Has Been Demonstrated Through Appropriate Evidence and Is Not Disputed

Through its Motion for Default Judgment, the FTC seeks entry of an order against iBackPack of Texas, LLC, ("iBackPack of Texas") that includes a monetary judgment in the amount of $797,520.20. The amount of the judgment was calculated from evidence presented through the declaration of FTC investigator Kathleen Nolan.

As a first step, Nolan totaled the amounts that consumers paid to the defendants, as shown through the campaign pages for each of four crowdfunding campaigns at issue in this action:[2]

- $720,965 paid by 4,032 consumers in the "iBackPack" campaign;[3]

- $76,694 paid by 252 consumers in the "iBackPack 2.0" campaign;[4]

- $3,644 paid by 33 consumers in the "MOJO" campaign;[5] and

- $7,982 paid by 155 consumers in the "POW" campaign.[6]

As a second step, Nolan subtracted $11,782.80, the amount that the defendants provided as refunds to consumers who had contributed to "MOJO" and "POW" campaigns.[7] As explained in Nolan's declaration, the $11,782.80 figure was reflected in records provided by defendant Monahan.[8]

The calculation presented by the FTC's motion is correct both substantively and procedurally. First, as a matter of substantive law, the measure of equitable monetary relief in FTC consumer protection matters is the defendant's net revenues: the amount

---

[2] Dkt. 35 (Plaintiff's Motion for Summary Judgment), Ex. 1, Declaration of FTC Investigator Kathleen Nolan ("Nolan Decl.") ¶ 36. There is no requirement that the evidence used to calculate the judgment amount be attached to the motion for default judgment. *Cf.* 10 James Wm. Moore *et al., Moore's Federal Practice* § 55.36 (2020) ("When the court has sufficient information from the existing record to determine the amount of damages, further inquiry or an evidentiary hearing is unnecessary. The court may fix the amount of damages and render judgment based on the record.").

[3] *Id.* Att. E ("iBackPack" campaign page).

[4] *Id.* Att. F ("iBackPack 2.0" campaign page).

[5] *Id.* Att. G ("MOJO" campaign page).

[6] *Id.* Att. H ("POW" campaign page).

[7] *Id.* ¶ 36. The defendants made these refunds only after having been contacted by the FTC concerning a potential law enforcement action against them. *Id.*

[8] *Id.*

consumers paid minus refunds. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016); *FTC v. Think All Publ'g, L.L.C.*, No. 07-011, 2008 U.S. Dist. LEXIS 18623, at *6 (E.D. Tex. Mar. 11, 2008); *FTC v. Namer*, 781 F. Supp. 1136, 1143 (E.D. La. 1991).

Second, as a matter of procedure, the Court may rely on a declaration and supporting evidence to determine a default judgment where the amount is capable of mathematical computation. *E.g.*, *UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 289 (5th Cir. 2018) (affirming a judgment amount that was supported by an affidavit and related evidence where the amount could be "made certain by computation"); *Leedo Cabinetry v. James Sales & Distribution*, 157 F.3d 410, 414 (5th Cir. 1998) (same); *Lohr v. Gilman*, No. 15-1931, 2018 U.S. Dist. LEXIS 201133, at *21 (N.D. Tex. Nov. 28, 2018) (awarding a judgment supported by a declaration calculating the amount from financial records). Courts have entered default judgments for substantial sums— including millions of dollars—in FTC actions where, as here, the Commission has supported the award with an appropriate showing. *E.g.*, *FTC v. Student Aid Ctr., Inc.*, No. 16-21843, 2017 U.S. Dist. LEXIS 216841, at *2–3 (S.D. Fla. Nov. 17, 2017) (entering $35 million default judgment); *FTC v. Kutzner*, No. 16-999, 2017 U.S. Dist. LEXIS 214352, at *21 (C.D. Cal. Aug. 28, 2017) (entering $18 million default judgment); *FTC v. Springtech 77376 LLC*, No. 12-4631, 2013 U.S. Dist. LEXIS 155929, at *12 (N.D. Cal. Oct. 25, 2013) (entering $7 million default judgment).

Although the Nolan declaration and the materials on which it relies are by themselves a sufficient basis to enter judgment in the amount of $797,520.20, other considerations provide additional support for the judgment amount. As an unrepresented entity, iBackPack of Texas was unable to file an answer in this matter, but its sole owner and chief executive officer, Douglas Monahan, filed an answer in his capacity as an individual defendant that admitted the approximate amounts taken in each campaign.[9] In addition, Monahan has agreed to a proposed Stipulated Order for Permanent Injunction and Monetary Judgment that implicitly acknowledges $797,520.20 as the correct calculation of net revenues.[10] These filings demonstrate that there is no factual dispute concerning the amount of consumer loss in this matter.

The judgment amount here, in accord with the relevant procedure, has been calculated in a declaration using evidence sufficient to establish the defendant's net

---

[9] Dkt. 1 (Complaint) ¶ 19 (alleging approximately $721,000 raised in the "iBackPack" campaign); *id.* ¶ 18 (alleging $76,694 raised in the "iBackPack 2.0" campaign); *id.* ¶ 23 (alleging $3,644 raised in the "MOJO" campaign); *id.* ¶ 25 (alleging $7,982 raised in the "POW" campaign); Dkt. 18 (Answer) ¶¶ 19, 18, 23, 25 (admitting the amounts alleged).

[10] Dkt. 52-1 (Proposed Stipulated Order for Permanent Injunction and Monetary Judgment) § III (agreeing to entry of judgment in the amount of $797,520.20, with the judgment suspended subject to specified conditions).

revenues. Moreover, the amount is not in dispute, as demonstrated both by defendant Monahan's Answer and by the proposed Stipulated Order for Permanent Injunction and Monetary Judgment that he has signed. Accordingly, the Court may appropriately enter the provisions of the proposed order imposing judgment in the amount of $797,520.20.[11]

## B. The Recordkeeping and Compliance Provisions of the Proposed Order Are Authorized Relief and Appropriate to Prevent Further Violations

The proposed default judgment order sought by the FTC contains substantive conduct relief provisions crafted to prevent further law violations by iBackPack of Texas:

- Section I would permanently enjoin iBackPack of Texas from engaging or participating in any crowdfunding activities; and

- Section II would enjoin iBackPack of Texas from making, or assisting others in making, material misrepresentations in connection with the promoting or offering for sale of any good or service.

As discussed in the FTC's motion for default judgment, both provisions are appropriate to prevent future violations, and numerous courts in this Circuit have imposed similar bans and prohibitions.[12]

In addition, the proposed order also contains a number of compliance monitoring and recordkeeping provisions to ensure iBackPack of Texas's compliance with this substantive conduct relief:

- Section VI would require that iBackPack of Texas deliver copies of the order to its employees, agents, representatives, principals, and managers;

- Section VII would require that iBackPack of Texas inform the FTC of, among other things, any changes in its business structure that might affect its compliance obligations under the order;

- Section VIII would require iBackPack of Texas to create and maintain certain business records; and

---

[11] If the Court has reservations concerning the amount of the default judgment, it has discretion to conduct a hearing before entering judgment. Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages"). It appears, however, that there would be no factual disputes to resolve at such a hearing.

[12] Dkt. 36 (Plaintiff's Motion for Default Judgment) at 7–9. Identical conduct provisions are included in the proposed Stipulated Order for Permanent Injunction and Monetary Judgment that would resolve the FTC's claim against defendant Monahan. Dkt. 52-1 §§ I (Ban on Crowdfunding Activities), II (Prohibition Against Misrepresentations).

- Section IX would require iBackPack of Texas to, upon the written request of the FTC, submit reports and produce other material in order to monitor its compliance.

For the reasons explained below, these provisions are also authorized and appropriate relief for iBackPack of Texas's violations.

The FTC seeks relief against iBackPack of Texas pursuant to Section 13(b) of the FTC Act, which grants broad permanent injunctive authority to prevent further violations of the FTC Act. 15 U.S.C. § 53(b) ("[I]n proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."); *see, e.g., FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 718 (5th Cir. 1982) ("Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it"). It is "well settled that record-keeping and monitoring provisions . . . are . . . appropriate to permit the Commission to police the defendants' compliance with the order" and prevent further violations. *FTC v. Capital Choice Consumer Credit, Inc.*, No. 02-21050, 2004 U.S. Dist. LEXIS 31476, at *12–13 (S.D. Fla. May 4, 2004) (internal quotation marks omitted). *See, e.g., FTC v. OMICS Group Inc.*, 374 F. Supp. 3d 994, 1014 (D. Nev. 2019) ("[T]he FTC's requested . . . monitoring provisions are necessary to ensure compliance."); *United States v. Daniel Chapter One*, 89 F. Supp. 3d 132, 144 (D.D.C. 2015) ("[C]ourts may order record-keeping and monitoring to ensure compliance with a permanent injunction.").

The provisions set forth in Sections VII through IX are designed to ensure iBackPack of Texas's compliance with the terms of the proposed order. Similar provisions have been imposed by courts of this Circuit in FTC enforcement actions resolved by settlement or by summary judgment. *E.g., United States v. Commercial Recovery Sys., Inc.,* No. 15-036 (E.D. Tex. Apr. 18, 2016) (imposing monitoring and compliance provisions as part of an award of summary judgment); *United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 821 (N.D. Tex. 2008) (same); *FTC v. IAB Mktg. Assocs., LP,* No. 14-458 (N.D. Tex. Oct. 10, 2014) (entering stipulated order with monitoring and compliance provisions); *FTC v. Medical-Billing.Com, Inc.,* No. 02-702 (N.D. Tex. Nov. 19, 2003) (same); *FTC v. Churchill,* No. 00-324 (S.D. Tex. Apr. 20, 2001) (Hittner, J.) (same). And similar provisions are included in the proposed Stipulated Order for Permanent Injunction and Monetary Judgment that would resolve the FTC's claim against defendant Monahan.[13]

Such provisions are equally appropriate where FTC enforcement actions are resolved by default judgment, as a defendant who failed to engage in litigation is no less likely to again violate the law than one who contested the complaint. Indeed, in

---

[13] Dkt. 52-1 (Proposed Stipulated Order for Permanent Injunction and Monetary Judgment) §§ VI (Order Acknowledgments), VII (Compliance Reporting), VIII (Recordkeeping), IX (Compliance Monitoring).

circumstances in which some defendants have been found liable through summary judgement and others through default judgment, the court may enter one order with provisions—including recordkeeping and compliance provisions—that apply to both the defaulting and non-defaulting defendants. *E.g.*, *FTC v. CD Capital Investments, LLC*, No. 14-1033 (C.D. Cal. Aug. 22, 2016); *FTC v. Partners in Health Care Ass'n, Inc.*, No. 14-23109 (S.D. Fla. June 27, 2016).

The type of compliance monitoring and recordkeeping provisions sought here by the FTC have been awarded in default judgment orders by courts across the country. *E.g.*, *FTC v. Impetus Enter., Inc.*, No. 18-1987 (C.D. Cal. Feb. 27, 2020); *FTC v. Pointbreak Media, LLC*, No. 18-61017 (S.D. Fla. Apr. 25, 2019); *FTC v. Global Processing Solutions, LLC*, No. 17-4192 (N.D. Ga. Sept. 4, 2018); *FTC v. EMP Media, Inc.*, No. 18-35 (D. Nev. June 15, 2018); *FTC v. Sicard*, No. 17-1257 (M.D. Fla. Jan. 23, 2018); *FTC v. Trothsolutions Inc.*, No. 17-698 (N.D. Ala. Oct. 17, 2017); *FTC v. Click4Support, LLC*, No. 15-5777 (E.D. Penn. Feb. 3, 2017); *FTC v. Midway Indus. LLC*, No. 14- 2312 (D. Md. Aug. 31, 2016); *FTC v. Sitesearch Corp.*, No. 14-2750 (D. Ariz. Dec. 11, 2015); *FTC v. American Yellow Browser, Inc.*, No. 15-2047 (N.D Ill. Nov. 20, 2015). These orders reflect widespread recognition that, without basic tools to permit the FTC to police defendants' compliance, the public is likely to suffer additional harm from further violations.

The recordkeeping and compliance monitoring provisions included in the proposed default judgment order are within the scope of relief that the Court is authorized to provide under the FTC Act. Moreover, they are appropriate to prevent further harm to the public. For these reasons, the FTC respectfully requests that the Court include them in its award of default judgment against iBackPack of Texas.

\*     \*     \*     \*     \*

For the foregoing reasons, the FTC respectfully requests that the Court enter the FTC's proposed order against iBackPack of Texas in its entirety, including monetary judgment in the amount of $797,520.20 and the requested recordkeeping and compliance monitoring provisions.

                Sincerely,

                /s/ Daniel Hanks, Counsel for Plaintiff

cc:    Douglas Monahan